WRIGHT, Retired Appellate Judge.
On December 11,1995, Willard White sued John Pratt, asserting claims of negligence and wantonness arising out of a one-car automobile accident. John answered on May 13, 1996. On July 10, 1996, John amended his answer to assert the affirmative defenses of contributory negligence and assumption of the risk.
On October 14, 1997, John filed a motion for a summary judgment, along with a narrative summary of the undisputed facts, a supporting brief, and supporting documents. White filed an opposition to the motion, along with supporting documents. On May 10, 1998, the trial court entered a summary judgment in favor of John, finding that White was a “guest” within the meaning of Ala. Code 1975, § 32-1-2, was guilty of contributory negligence, and assumed the risk of injury when he chose to ride with John.
White appeals, contending that he was a “passenger” within the meaning of Ala.Code *211 1975, § 32-1-2, and that the trial court erred when it found that he was contributorily negligent and that he assumed the risk of injury when he chose to ride with John. This case is before this court pursuant to § 12-2-7(6), Ala.Code 1975.
A summary judgment motion may be granted when no genuine issue of a material fact exists and the moving party is entitled to a judgment as a matter of law. Hand v. Greensprings Storage, 678 So.2d 1187 (Ala.Civ.App.1996). If the moving party makes a prima facie showing that no genuine issue of a material fact exists and that it is entitled to a judgment as a matter of law, the burden shifts to the nonmovant to present substantial evidence demonstrating the existence of a genuine issue of a material fact. Id.
Generally, the presence, or absence, of negligence is a question for a jury to determine. Curry v. Welborn Transport, 678 So.2d 158 (Ala.Civ.App.1996). Usually, issues of negligence and contributory negligence turn on the unique facts of each case. Id. Thus, a summary judgment is rarely appropriate in a negligence action, Curry, and should not be disposed of in a peremptory manner. Brown v. AAA Wood Products, Inc., 380 So.2d 784 (Ala.1980).
The record reveals the following pertinent facts: In 1994, White was an employee of Pratt Logging Company. It was customary for one of the owners of the company to transport White to and from work. White testified by deposition that on February 28, 1994, Roy Pratt, one of the owners of the company, drove him to work. John and Glenn Pratt, Roy’s sons, arrived at the work-site in a tractor-trailer and in a worktruck.
White testified that he and the Pratts finished work between 2:30 and 4:30 p.m. After work, White rode with Roy to Kersey Cash’s house to get a bulldozer axle. White, Roy, and Cash loaded the axle onto Roy’s pickup truck. Shortly thereafter, John and Glenn arrived at Cash’s house.
Cash, who had a bar in his basement, invited White and the Pratts to have a beer. Cash testified by deposition that he had two six packs of beer in his bar. He drank approximately three beers, and the Pratts and White drank the remaining nine beers. White testified that he and John each drank three beers; Roy drank one or two beers; Glenn drank one beer and left early. White also stated that he and John each consumed three to five shots of liquor.
White said that at approximately 7:00 p.m., Roy decided that they should leave. Roy drove the tractor-trailer; John and White followed in the pickup truck. White stated that he thought that John might be drunk; that before getting into the pickup truck, he asked John several times if he was all right to drive; and that John assured him that he was. White said that he trusted John and would not have gotten into the pickup truck if John had not said he was all right to drive. White testified that he fell asleep and does not know how the accident happened. The next thing he remembers is waking up in the hospital nine days later. As a result of the accident, White received a head injury, lost part of one ear, and has a scar on his forehead and across the top of his head. White has not returned to work for the company or in the logging industry because, he says, he loses his balance and falls while walking in the woods. White also stated that people will not hire him because he sued his employer.
John testified by deposition that White was a family friend, who lives approximately three miles from John’s house. White did not have a car when he worked for the company. One of the Pratts always drove White to and from work. John stated that on February 28, 1994, either he or his brother drove White to work.
After work, John, White, Roy, and Glenn went to Cash’s house to get a bulldozer axle. John drove the worktruck to Cash’s house and thought White rode with Glenn. After they loaded the axle, Cash invited them into the house to have a drink. John stated that he drank three or four beers, two shots of rum, and two shots of gin. According to John, White was very intoxicated and attempted to drive the pickup truck, but Roy would not allow White to drive.
John testified that he was to drive the pickup truck to Roy’s house, and Roy would drive him and White home. White did not *212 fall asleep in the truck, but was loud and babbling. John stated that he hit a bump in the road, which caused the pickup truck to go off the road and into some bushes and trees. He hit his head on the steering wheel and did not know what White’s condition was after the accident. John crawled out of the pickup truck and went to get help; Roy was at the top of the hill. John got in the tractor-trailer with his father, and they went to get help. John admitted that he was charged with driving under the influence of alcohol, but the charges were later dropped. He admitted that he refused to take a “breath test” and that his driver’s license was suspended for 90 days. John stated that his speed was 50 m.p.h. when he hit the bump, not 65 m.p.h. as estimated by the trooper, and that he left 75 feet of skidmarks, not 113 feet as reported by the trooper. He admitted that his memory of events after the accident is not clear and that he did not go to the accident scene and measure the skidmarks. John also stated that he does not remember the trooper or refusing to take a “breath test.”
Section 32-1-2, Ala.Code 1975, provides as follows:
“The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the willful or wanton misconduct of such operator, owner, or person responsible for the operation of said motor vehicle.”
Section 32-1-2 does not define the word “guest”; however, our supreme court has defined a “guest” in the context of § 32-1-2 as follows:
“If the transportation of a rider confers a benefit only to the person to whom the ride is given, and no benefits other than hospitality, goodwill, or the like are conferred on the person furnishing the transportation, then the rider is a ‘guest.’ ”
Dorman v. Jackson, 623 So.2d 1056, 1057 (Ala.1993). See also Rogers v. Kimbrell, 658 So.2d 387 (Ala.1995). A passenger-for-hire relationship exists under the following circumstances:
“If the transportation ‘tends to promote the mutual interest of both [the rider] and the driver for their common benefit, thus creating a joint business relationship between the motorist and his rider, or if the rider accompanies the driver at the instance of the driver for the purpose of having the rider render a benefit or service to the driver on a trip that is primarily for the attainment of some objective of the driver, the rider is a “passenger for hire” and not a “guest.” ’ ”
Dorman, 623 So.2d at 1057 (quoting Sellers v. Sexton, 576 So.2d 172, 174 (Ala.1991)).
Based upon our review of the record, we conclude that there is a genuine issue of a material fact that should be determined by a jury. A jury could consider whether White and John had a business relationship, since both parties went to Cash’s house to load an axle for the company, and/or whether John’s transporting White was part of their regular work relationship. Dorman.
Next, we must address whether White was contributorily negligent or assumed the risk of injury in accepting a ride from John.
As a general rule, a jury should determine the issue of contributory negligence, and, ordinarily, the issue should not be disposed of by a trial court in a peremptory manner. Driver v. Nat’l Security Fire & Casualty Co., 658 So.2d 390 (Ala.1995). Our supreme court has described contributory negligence and assumption of the risk in the context of a passenger as follows:
“ ‘[A] person riding in an automobile driven by another is not absolved from all personal care for his own safety, but has the duty of exercising reasonable or ordinary care to avoid injury.... The duty of the passenger is, therefore, not original, with respect to the operation of the vehicle, but is resultant and is brought into effect by known and appreciated circumstances.’
“(Emphasis added.) The element of ‘known and appreciated circumstances’ giving rise to the duty of personal care is also a criterion for the assumption of the risk defense. That defense requires proof of *213 two essential elements: (1) knowledge and appreciation of the risk and (2) voluntary-exposure to that risk. Employers Casualty Co. v. Hagendorfer, 393 So.2d 999 (Ala.1981); Kemp v. Jackson, 274 Ala. 29, 145 So.2d 187 (1962). This court has often recognized the overlapping of these two affirmative defenses in certain fact situations. See Kemp v. Jackson, 274 Ala. 29, 145 So.2d 187 (1962); McGeever [v. O’Byrne], [203 Ala. 266, 82 So. 508 (1919) ].”
Driver, 658 So.2d at 393 (quoting Brown v. AAA Wood Products, Inc., 380 So.2d 784, 787 (Ala.1980)).
White admitted that he thought that John might be drunk; however, White’s testimony — that he asked John several times if he was all right to drive, that John responded that he was all right, and that he would not have gotten in the pickup truck otherwise — was undisputed. Therefore, we conclude that there was sufficient evidence presented to create a jury question as to whether White had a duty of personal care. Driver.
Additionally, the trial court found that White’s wantonness claim was barred by his assumption of the risk of injury. Assumption of the risk is not a valid defense to wantonness. Chance v. Dallas County, 456 So.2d 295 (Ala.1984); Blount Bros. Constr. Co. v. Rose, 274 Ala. 429, 149 So.2d 821 (1962). See also Brown v. Carver, 599 So.2d 599 (Ala.1992).
Accordingly, we reverse the judgment of the trial court and remand this ease for further proceedings.
The foregoing opinion was prepared by Retired Appellate Judge L. Charles Wright while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala.Code 1975.
REVERSED AND REMANDED.
ROBERTSON, P.J., and YATES, MONROE, and CRAWLEY, JJ., concur.
THOMPSON, J., concurs in the result.